UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHARMEL[1] DENISE GIVENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:23-cv-00052-SRC ) |
| MARTIN O'MALLEY, Commissioner of the Social Security Administration,[2] | ) ) ) ) |
| Defendant. | ) ) ) |

**Memorandum and Order**

Sharmel Givens requests judicial review, under 42 U.S.C. § 405(g), of the Commissioner of the Social Security Administration's final decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. The Court affirms the Commissioner's decision.

**I.    Procedural history**

In January 2019, Givens filed an application for disability insurance benefits. Tr. 225–26. The Social Security Administration denied her application. Tr. 69–79, 85–89. Givens then requested a hearing before an Administrative Law Judge, Tr. 91–94, in which she testified, Tr. 43–59. After the hearing, the ALJ denied Givens's application, Tr. 10–31, and the Appeals

---

[1] Givens writes her first name with alternative spellings. *See* Tr. 225 ("My name is Sharmel Givens. I have used the following name(s): Sharmell Denise Moore . . . .").
[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Martin O'Malley for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Council denied Givens's request for review, Tr. 1–7. As such, the ALJ's opinion stands as the final decision of the Commissioner.

## II. Standard for determining disability under the Act

Under the Social Security Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. *Id.* at § 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *Id.*

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment[] [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

2

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. 20 C.F.R. § 416.920(a)(4)(iii), (d). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. *Id*.

Fourth, if the claimant's impairment is severe but does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination[] if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

### III.  The ALJ's decision

The ALJ determined the following. Givens met the insured-status requirements of the Social Security Act through December 31, 2023,[3] and Givens had not engaged in substantial gainful activity since September 30, 2018—Givens's alleged onset date. Tr. 15–16. Next, Givens suffers from both severe impairments—"degenerative disc disease of the lumbar spine, right knee internal derangement, and obesity"—and nonsevere impairments. Tr. 16. But Givens lacks an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 16–17.

Considering Givens's "symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence," Givens has the residual functional capacity (RFC) to perform light work. Tr. 18 (citing 20 C.F.R. §§ 404.1567(b)). Under section 404.1567(b), "[l]ight work involves lifting no more than

---

[3] Givens erroneously claims she is insured "under Title II of the Act through December 31, 2024." Doc. 11 at 2.

4

20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing."

Next, based on the vocational expert's findings, Givens's past relevant work as a currency-exchange manager falls under Dictionary of Occupational Titles (DOT) 186.167-086. Tr. 24; *see* DOT 186.167-086 (G.P.O.), 1991 WL 671339 (Jan. 1, 2016). The DOT categorizes this as sedentary work, but Givens performed it as light work. *Id*. Givens's RFC does not preclude a currency-exchange manager's work-related activities. *Id*. As such, Givens can perform this past relevant work. *Id*. at 24–25.

Finally, Givens was not disabled, as defined in the Social Security Act, 20 C.F.R. §§ 404.1520(f), 416.920(f), between September 30, 2018, and December 3, 2022, the date of the ALJ's decision. Tr. 26. Givens appeals, challenging the ALJ's determinations at step four. Docs. 1, 11.

**IV.     Standard of review**

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports his decision. 42 U.S.C. §§ 1383(c)(3), 1405(g). If it does, the Court must affirm the decision. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those

5

determinations are supported by good reasons and substantial evidence." *Id*. (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015). The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

V. Discussion

Givens disputes the ALJ's findings at step four. *See* doc. 11. And she argues, with interrelated reasons, that: (1) the ALJ erroneously accepted the vocational expert's testimony; (2) the ALJ misclassified Givens's past work; and (3) the ALJ erroneously determined Givens could perform past relevant work. *Id*. at 2–8. In response, the Commissioner argues that substantial evidence supports the ALJ's step-four findings. Doc. 12 at 1–2. The Court addresses each of Givens's arguments in turn.

A.   **The ALJ properly relied on the vocational expert's testimony**

First, Givens argues that the ALJ erroneously accepted the vocational expert's testimony. Doc. 11 at 2. In the appeals process, an ALJ may seek the view of a vocational expert. *Biestek*, 139 S. Ct. at 1152. Such a witness "must have expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." *Id.* (cleaned up).

Givens does not question the expert's qualifications. *See generally* doc. 11; *see also* Tr. 56 (showing Givens's attorney not objecting to the expert's "professional qualifications" and "serving as the vocational expert"). Rather, she argues that the expert's testimony conflicted with evidence in the record and that the ALJ failed to address these conflicts. *Id*. at 2. "S[ocial Security Ruling] 00–4p . . . plac[es] on the ALJ an affirmative responsibility to ask about 'any

6

possible conflict' between [vocational-expert] evidence and the DOT, and to obtain an explanation for any such conflict, before relying on [vocational-expert] evidence to support a determination the claimant is not disabled." *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014) (citing *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)); *see* SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000).  But reasonable explanations for conflicts—or apparent conflicts—exist, as set forth in the SSA's Policy Interpretation Ruling SSR 00-4P, under the heading "Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information":

> Evidence from [vocational experts] can include information not listed in the DOT. . . .  Each occupation [in the DOT] represents numerous jobs.  Information about a particular job's requirements . . . may be available . . . from a [vocational expert's] experience in job placement or career counseling.
>
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.  A [vocational expert] or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4P.

In her work-history report, Givens stated she formerly worked as a currency-exchange manager.  Tr. 282.  In this position, she cashed checks; issued money orders; processed payments; trained new hires; issued lottery tickets; refilled the ATM machine; ordered negotiables; made deposits; lifted rolled coins, ink, and paper; and carried office supplies.  Tr. 284.  Additionally, she claimed to have supervised one to seven people, spent "100%" of her time supervising people, hired and fired employees, and been a "lead worker."  *Id*.  Finally, the job required her to walk and stand seven hours, and she checked "20 lbs" as "the heaviest weight [she] lifted" and "10 lbs" as the "weight [she] frequently lifted."  Tr. 284.

At the hearing, the vocational expert identified this position as "manager, . . . financial industry, . . . [DOT] 186.167-086."  Tr. 60.  Such a person "[m]anages [a] branch or office of financial institutions, such as [a] commercial bank, credit union, finance company, mortgage

7

company, savings bank, or trust company." DOT 186.167-086.  Further, the DOT provides various tasks for this position:

> Directs and coordinates activities to implement institution policies, procedures, and practices concerning granting or extending lines of credit, commercial loans, real estate loans, and consumer credit loans. Directs, through subordinate supervisors, activities of workers engaged in implementing establishment services and performing such functions as collecting delinquent accounts, authorizing loans, or opening savings account[s]. Establishes procedures for custody and control of assets, records, loan collateral, and securities to ensure safekeeping. Contacts customers and business, community, and civic organizations to promote goodwill and generate new business.

*Id*.  The DOT identifies this as a sedentary job, but the vocational expert described it as "at least light as [she's] seen it performed."  Tr. 60.

Givens alleges the ALJ failed to address three conflicts regarding the above definition: (1) the mismatch between the definition and Givens's job description; (2) Givens's lack of college degree; and (3) Givens's lack of computer skills.  The Court finds the ALJ properly addressed the first alleged conflict, and the Court finds the evidence fails to support the second and third alleged conflicts.

First, Givens argues that "[no] task in her own description of her job is consistent with the above-cited definition of Manager, Financial Institution."  Doc. 11 at 5.  But the Court is not persuaded.  While her description and the DOT definition are not mirror images, they share some similarities.  Generally, both take place in a financial setting.  Specifically, both involve supervisory roles.  As a currency-exchange manager, Givens spent "100%" of her time supervising people.  Tr. 284.  Similarly, the financial institution manager supervised the activities of other employees.  DOT 186.167-086.

Further, the vocational expert provided explanations for seeming conflicts between Givens's description and the DOT definition.  A vocational expert may use her own experience

8

to provide information on specific job requirements. SSR 00-4P. The expert did just this to resolve the discrepancy between the listed exertion level for financial-institution manager—sedentary, DOT 186.167-086—and the exertion level for Givens's past work—light, *see* 20 C.F.R. § 404.1567(b); Tr. 284. The expert explained that this DOT job is "at least light as [she's] seen it performed." Tr. 60.

Additionally, the expert addressed the seeming discrepancy between the specific job requirements. At times, the ALJ questioned the expert's job-requirement description. *See, e.g.*, Tr. 63 ("I'm kind of confused on what you're [sic] described as the currency exchange past work at this point."). But then the expert clarified. *See id.* The expert explained that a manager may have to perform the activities of her subordinates: "the [vocational expert] said that the currency exchange manager performed [other] tasks as a part of her job duties as a currency exchange manager, noting that often the currency exchange manager was the only employee present at such a business in her experience." Tr. 25 (ALJ decision); *see also* Tr. 63 ("the manager . . . steps in or sometimes some of these offices only have the manager and don't have other people in the store depending on how busy they are."). Relying upon her experience, the expert delineated more specific job requirements. *See* Tr. 60–67; *see also* SSR 00-4P.

With the expert's testimony, Givens's "reliance on the DOT as a definitive authority on job requirements is misplaced." *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997). "DOT definitions are simply generic job descriptions that offer 'the approximate maximum requirements for each position . . . .'" *Id*. (citations omitted). And as previously stated, a vocational expert may provide reasonable explanations to seeming conflicts. SSR 00-4P. Here, the vocational expert provided explanations based on her experience, *see* Tr. 60, 63, and the ALJ sought appropriate clarification, *see* Tr. 63. Additionally, at the end of the hearing, the ALJ

9

confirmed with the expert that her testimony was consistent with the DOT.  Tr. 67.  Thus, the ALJ properly addressed the seeming conflicts and properly relied on the vocational expert's testimony.  *See Welsh*, 765 F.3d at 929 (citing *Kemp*, 743 F.3d at 633).

Second, Givens argues that "this work would likely require a four-year, if not graduate level, college degree and would likely take years of working up the ladder in the institution or being hired after a successful career in a related field."  Doc. 11 at 4.  But Givens provides no support for this statement.  *See id*.  The DOT makes no mention of a college degree, *see* DOT 186.167-086; Givens points to no authority requiring such degree, *see* doc. 11 at 4; and Givens's attorney failed to cross-examine the expert on this alleged conflict during the hearing, *see* Tr. 61–66.  Because the Court "may neither pick nits nor accept an appellant's invitation to rely upon perceived inconsistencies," *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam), the Court finds no conflict here.

Third, Givens argues that "any manager of a financial institution such as one contemplated in the above-cited definition would clearly have to be able to use [a computer] to perform nearly every aspect of his or her job in the present time."  Doc. 11 at 5.  But again, she provides no support.  *See id*.  The DOT makes no mention of computer skills, *see* DOT 186.167-086; Givens points to no authority requiring computer skills, *see* doc. 11 at 5; and Givens's attorney likewise failed to cross-examine the expert on this alleged conflict during the hearing, *see* Tr. 61–66.  Thus, the Court declines to nitpick based on Givens's perceived inconsistencies, and the Court finds no conflict here.  *See Chismarich*, 888 F.3d at 980.

      **B.**     **Givens's past relevant work was not a composite job**

Givens argues that the ALJ misclassified her past work.  Doc. 11 at 2.  Specifically, she argues that her past work was a composite job.  *Id*. at 6.  "A composite job involves 'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT.'"  *Sloan v.*

*Saul*, 933 F.3d 946, 950 (8th Cir. 2019) (alteration in original) (quoting SSR 82-61, 1982 WL 31387, at *2 (1982)).  Further, "[p]ast relevant work may constitute a composite job 'if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant.'" *Id*. (alteration in original) (first quoting *Program Operations Manual Sys.*, DI 25005.020, and then citing *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 953–54 (11th Cir. 2018) (per curiam)).  However, "[t]hat a job entails responsibilities beyond those outlined in the DOT does not necessarily make it a composite job." *Id*. (emphasis omitted).

Substantial evidence supports the ALJ's finding that Givens did not perform a composite job.  The ALJ relied upon the vocational expert's testimony for this determination.  Tr. 25; *see Biestek*, 139 S. Ct. at 1152 ("For guidance . . . ALJs often seek the views of 'vocational experts.'" (citations omitted)).  As explained above, based on the expert's experience, a supervisor may take on the activities of subordinates.  *See* Tr. 63.  As such, a currency-exchange manager may perform the tasks of a check cashier, a less skilled job.  *See* Tr. 62–63.  Givens's performing less skilled tasks (e.g., cashing checks or refilling the ATM machine, Tr. 284) does not turn her job into a composite job; rather, the role of manager required her to perform these other tasks.  Tr. 63.  With this explanation, the vocational expert provided the ALJ with relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (citation omitted).  Thus, substantial evidence supports the ALJ's determination that Givens did not perform a composite job.

### C.     Givens can perform past relevant work

Finally, Givens argues that the ALJ lacked substantial evidence for determining that Givens could perform her past work as generally and actually performed.  Doc. 11 at 8.  Specifically, she argues her past work exceeded the limitations of light work.  *Id*.  This argument hinges on a factual dispute:  whether Givens had to carry coins weighing 25 to 30 pounds as a

11

currency-exchange manager. *See* doc. 17 at ¶ 6 ("Defendant denies that Plaintiff testified to carrying bags of coins and quarters."); *see also* 20 C.F.R. § 404.1567(b)–(c) ("Light work involves lifting no more than 20 pounds at a time . . . . Medium work involves lifting no more than 50 pounds at a time"). The ALJ answered in the negative, *see* Tr. 25, and the Court finds substantial evidence supports her determination.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (citation omitted). Two pieces of evidence support the ALJ's decision: (1) Givens's work-history report, and (2) the hearing testimony.

First, in her work-history report for her currency-exchange-manager position, Givens checked "20 lbs" as "the heaviest weight [she] lifted" and "10 lbs" as the "weight [she] frequently lifted." Tr. 284. These weights correspond to light work. *See* 20 C.F.R. § 404.1567(b). As such, the report supports the ALJ's determination.

Second, at the hearing, Givens discussed coin shipments, but she never explicitly claimed to carry coins exceeding 20 pounds:

> **[ATTORNEY:]** Okay, did you get—did they bring in shipments of coins and money on a daily basis?
>
> **[GIVENS:]** Yes, sir.
>
> **[ATTORNEY:]** What denominations of say quarters did you get in?
>
> **[GIVENS:]** Quarters come in a box containing $500 worth of quarters, dimes is $250 worth, nickels is $100, pennies is $25. The Brinks personnel would bring them into the store and set them on the floor or the top of the safe. We have to count them in. As a manager you have to count it in, and then divide it up and place it into the actual safe and the amount that you get in varies on the volume of business at that time of the month.

Tr. 59.  Givens relies on the above exchange to argue that she "testified to carrying bags of coins and quarters in denominations of $500."  Doc. 8 at 11.  But the testimony does not clearly make that claim.

At best, multiple interpretations of Givens's testimony exist.  But when multiple interpretations exist, the Court must choose the ALJ's:  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision."  *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (alterations in original) (quoting *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)).  Givens interprets her testimony as claiming to carry coins exceeding 20 pounds, *see* doc. 8 at 11, but the vocational expert and ALJ did not, *see* Tr. 25.  When Givens's attorney asked the vocational expert if lifting $500 in quarters would exceed light work, the expert said, "It would.  But would a person have to lift the entire thing all at one time?"  The attorney responded, "I believe she testified that she did, but that's beside the point."  Tr. 62.  The expert protested, "No, it's not—," but the attorney moved on.  Tr. 62.  This exchange shows the attorney and expert interpreted Givens's testimony differently, and the attorney chose not to develop the point.

Ultimately, the ALJ accepted the expert's position and determined that Givens's past work did not require her to carry coins exceeding 20 pounds.  Tr. 25.  The work-history report and disputed testimony adequately support the ALJ's finding.  *See Biestek*, 139 S. Ct. at 1154 (citation omitted).  As such, the Court affirms the ALJ's decision.

**V.     Conclusion**

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  It does not substitute its own

13

judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ applied correct legal standards, this Court affirms the ALJ's decision.  Accordingly, the Court affirms the decision of the Commissioner and dismisses Givens's [1] Complaint with prejudice.  A separate judgment accompanies this Memorandum and Order.

So ordered this 25th day of March 2024.

*SLR. CQ*
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

14